RAYMOND NARDO, P.C.
129 Third Street
Mineola, NY 11501
(516)248-2121
raymondnardo@gmail.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JORGE PERILLA,

                Plaintiff,

  -against-                                  COMPLAINT

CITIZENS ICON HOLDINGS, LLC,

                Defendant.

------------------------------------------------------------X

        Plaintiff JORGE PERILLA ("Plaintiff"), by counsel, RAYMOND NARDO, P.C., upon personal knowledge, complaining of defendants, CITIZENS ICON HOLDINGS, LLC ("Defendants") alleges:

**PRELIMINARY STATEMENT, JURISDICTION, AND VENUE**

    1.    This action is an action by Plaintiff against his Defendant (collectively "the Parties") for damages he sustained as a result of Plaintiff's former employer's breach of contract and discrimination.

    2.    Jurisdiction is proper based on diversity under 28 U.S.C. § 1332 because:

        **a.**  Plaintiff, JORGE PERILLA, is a citizen of the State of New Jersey.

        **b.**  Defendant CITIZENS ICON HOLDINGS, LLC is a Delaware limited liability company with its headquarters in New York, New York, and is a citizen of the States of Delaware and New York.

      c.   The amount in controversy exceeds $75,000.

3.   Venue is proper under 28 U.S.C. § 1391 because the cause of action arose in the Southern District of New York.

## THE PARTIES

4.   Plaintiff is a citizen of New Jersey and resides in North Brunswick, New Jersey.

5.   Defendant is an American company that operates parking garages throughout the New York Metropolitan area.

## FACTS

6.   Plaintiff began working at Defendant, or a predecessor, more than 28 years ago.

7.   On or about September 30, 2014, Defendant Citizens Icon Holdings, LLC acquired Macquarie New York Parking 3, LLC.

8.   On or about September 29, 2014, the Parties executed an Employment Agreement to pay Plaintiff a salary of $137,355 for a period of three years.

9.   Defendant hired Plaintiff to be a Supervisor.

10.   In this capacity, Plaintiff performed the following duties:

      a.   Supervision of 32 parking locations

      b.   Managing over 150 employees

      c.   Scheduling of employees

      d.   Managing the payroll

      e.   Maintaining operations at facilities, including mechanical, structural, electrical, and logistics, and responding to crises as they arise

      f.   Training and managing employees at all levels

     **g.** Cultivating positive interactions with customers at all levels.

11. According to the terms of said Employment Agreement, Defendant could only terminate Plaintiff for cause, and "Cause shall mean (i) the commission of an act of theft, dishonesty or fraud against the Company; (ii) the commission of any act or the issuance of any statements (oral or written) that is contrary to the best interests of the Company or reflect negatively upon the Company or its reputation; (iii) the failure to reasonably perform your job duties or responsibilities; (iv) a material violation of the Company's policies and procedures; (v) other acts of gross misconduct relating to your employment at the Company; or (vi) a material breach by you of any provision of this Agreement; provided that if there exist events or conditions that constitute Cause as described in clauses (ii) through (v) above, if capable of cure as determined in good faith by the Company, the Company shall promptly notify you in writing of such events or conditions which constitute Cause, and you shall have fifteen (15) days from receipt of such written notice to cure such events or conditions, and, if cured, such events or conditio0sn shall not constitute Cause hereunder."

12. On or about February 22, 2017, the Parties agreed to extend the Employment Agreement for a period of 2 years, until September 29, 2019.

13. At all times, Plaintiff's performance was satisfactory or better.

14. On September 2, 2018, two employees had a disagreement while on duty in Defendant's garage at Grand Army Plaza. The disagreement became physical, and one of the employees was hospitalized with a broken nose.

15. Plaintiff learned of the incident on September 3, 2018, and immediately investigated it.

16. Plaintiff was unable to view an internal video, which recorded the incident, because the video needed to be reformatted.

17. Plaintiff suspended one of the employees, and reached the injured employee on Wednesday September 5, 2018, to obtain that individual's recollection of the incident. Plaintiff requested information from the injured person to complete a form for Workers' Compensation.

18. On September 5, 2018, Plaintiff received a call from Pablo Amaya, Director of Operations, asking Plaintiff if he knew of any incident at Grand Army Plaza. Plaintiff explained that he knew of the incident and was gathering details.

19. Later that day, Plaintiff received an email from Luis Hernandez, Director of Human Resources, directing Plaintiff to complete a Workers Compensation C-2F form by the end of the day.

20. Based on the information Plaintiff gathered, the form was completed and sent to Mr. Hernandez at around 3:35pm on September 5, 2018. Subsequently, Plaintiff received an email from Mr. Amaya to meet at the office.

21. Plaintiff arrived at the office before 5:00pm and met with Paul Regan, Senior Vice President of Operations, Mr. Amaya, and Joel Pichardo, also from the Human Resource Department.

22. Mr. Regan asked what occurred at the Grand Army Plaza garage, and Plaintiff advised him that one particular employee struck another. Mr. Regan then told Plaintiff that he was suspended with pay.

23. Plaintiff had worked for Defendants, or a predecessor company, for more than 28 years without ever being suspended.

24. On September 6, 2018, Plaintiff received an email advising him that he was suspended for failure to reasonably perform his job duties and responsibilities, and that he should report to his usual work location on September 10, 2018.

25. Plaintiff began working on September 10, 2018.

26. At approximately 3:40pm Mr. Amaya notified Plaintiff to be in the Human Resources Office at 4:30pm. Plaintiff met with Mr. Regan, Mr. Amaya, and Mr. Hernandez. At that time, Mr. Regan presented a termination letter stating, in sum, that Plaintiff was aware of the Grand Army Plaza incident on September 3, 2018, but he failed to notify Human Resources until September 5, 2018. The letter further stated that Plaintiff's failure to follow instructions/procedures and his mismanagement/negligent supervision in connection with the employee personal injury that occurred at QP Grand Army Plaza caused management to delay its response to an employee personal injury and exposed the Company to further liability and financial loss.

27. Plaintiff dutifully gathered the information, despite the fact that not all information was available, and timely reported it to Defendant.

28. Further, Plaintiff completed the Workers Compensation C-2F within 2 days, well within the 10 day period prescribed by §110 of the Workers' Compensation Law.

29. Defendant did not have cause to terminate Plaintiff.

30. Plaintiff was born on June 17, 1970.

31. Plaintiff was 48 years old at the time of his termination.

32. In addition, upon information and belief, approximately 10 employees over the age of 50 have been terminated, since Defendant began ownership and operation of the Company.

33. Defendant created a pretext to terminate Plaintiff because of his age.

34. At the time of his termination, Plaintiff had more than one year remaining on his Employment Agreement, at the salary of $137,355, excluding benefits, so his damages, and the amount in controversy, exceed $75,000.

### AS AND FOR A FIRST CAUSE OF ACTION

35. Plaintiff repeats, realleges, and reincorporates each and every allegation as though previously set forth herein.

36. Defendant terminated Plaintiff without cause, and without specifying any cause, under the governing Employment Agreement.

37. Defendant breached a contract between the parties, which caused Plaintiff damages.

### AS AND FOR A SECOND CAUSE OF ACTION

38. Plaintiff repeats, realleges, and reincorporates each and every allegation as though previously set forth herein.

39. Defendant is an "employer" under the New York State Human Rights Law ("NYSHRL"), Executive Law, § 292, et. seq.

40. Defendant terminated Plaintiff in violation of the NYSHRL based on Plaintiff's age, causing Plaintiff economic and non-economic damage.

### AS AND FOR A THIRD CAUSE OF ACTION

41. **P**laintiff repeats, realleges, and reincorporates each and every allegation as though previously set forth herein.

42. Defendant is an "employer" under the New York City Human Rights Law ("NYCHRL"), Title 8, New York City Charter and Administrative Code, §8-101, et. seq.

43. Defendant terminated Plaintiff in violation of the NYCHRL based on Plaintiff's age, causing Plaintiff economic and non-economic damage.

### JURY DEMAND

44. Plaintiff demands trial by jury.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants in excess of $75,000 as follows:

a. That this court award the Plaintiff backpay, frontpay, lost health insurance, life insurance, pension, and deferred compensation benefits, retirement benefits, stock options, vacation, personal, sick and accrued leave, which amounts are to be determined at trial, as well as pre-judgment interest, for Defendant's breach of contract;

b. That this court award the Plaintiff backpay, frontpay, lost health insurance, life insurance, pension, and deferred compensation benefits, retirement benefits, stock options, vacation, personal, sick and accrued leave, which amounts are to be determined at trial, compensatory damages, reinstatement to his former position, and

  an injunction against the employer for any further violations, as well as pre-judgment interest, for Defendant's willful unlawful termination in violation of the NYSHRL;

c. That this court award the Plaintiff backpay, frontpay, lost health insurance, life insurance, pension, and deferred compensation benefits, retirement benefits, stock options, vacation, personal, sick and accrued leave, which amounts are to be determined at trial, compensatory damages, punitive damages, reinstatement to his former position, and an injunction against the employer for any further violations, as well as pre-judgment interest, for Defendant's willful unlawful termination in violation of the NYSHRL

d. Counsel fees, disbursements, and costs; and

e. Any such other and further relief as this court deems necessary and proper.

Dated: October 17, 2018
   Mineola, NY

            Respectfully submitted,

            **RAYMOND NARDO, P.C.**

            By: _____
            RAYMOND NARDO, ESQ.
            129 Third Street
            Mineola, NY 11501
            (516)248-2121 (tel)
            (516)742-7675 (fax)
            raymondnardo@gmail.com